IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**GREGORY DAVIS,**

       **Plaintiff,**

**v.**                                                   **Civil Action No. 5:08cv128**
                                                             **(Judge Stamp)**

**UNITED STATES DEPARTMENT OF**
**JUSTICE EXECUTIVE OFFICE FOR**
**UNITED STATES ATTORNEY FREEDOM**
**OF INFORMATION/PRIVACY ACT STAFF,**

       **Defendant.**

## REPORT AND RECOMMENDATION

### I. Introduction

On August 13, 2008, Gregory Davis ("plaintiff") filed a Complaint pursuant to the Freedom of Information Act ("FOIA") and 5 U.S.C. § 552 seeking release of certain records. On August 26, 2008, plaintiff was granted leave to proceed *in forma pauperis*. Defendant filed a Motion for Summary Judgment and a Memorandum in support thereof on May 26, 2009. The undersigned then issued a Roseboro Notice on May 27, 2009. Plaintiff responded with a Motion for Summary Judgment on June 22, 2009. Plaintiff is seeking $97,000,000 in damages, release of requested records, and reasonable costs and attorney's fees. This matter is now before the undersigned for review and report and recommendation.

### II. Standard of Review

**A. Summary Judgment**

Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file,

1

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. liberty lobby, Inc., 477 U.S. 242, 248 *1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson at 248. Summary

2

judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita at 587 (citation omitted).

### III. Facts

On April 24, 2006, the plaintiff sent a letter to the Executive Office for the United States Attorneys ("EOUSA") requesting the following information:

> Disclosure of All Criminal Bonds, Bonding, Judgment Numbers, or otherwise as requested, Case No. #5:02-cr-00111-KSF-ALL, 02-111-KSF...Full disclosure and release of all records and or data contained in the files of your Department, or the Department and/or Agency listed above and below, under My Name and/or Identifier to my name.[1]

(Doc. 21-3, p1).

On May 15, 2006, the EOUSA advised the plaintiff that it had received his request and assigned it request number 06-1360. In addition, the letter advised the plaintiff that he must "provide more specific information about the records he was seeking, such as appropriate dates, locations, names, nature of the records, etc.(Doc. 21-3, p3). The plaintiff appealed this action, and on September 18, 2006, the Director of the Office of Information and Privacy affirmed the action taken on the plaintiff's initial request. In addition, the Director notified the plaintiff that the records of the EOUSA are maintained in over 100 separate offices located throughout the United States. Therefore, in order for his search to proceed, he would need to inform the EOUSA in which of these offices he would like a search conducted.(Doc. 21-3, p.9).

Although the plaintiff appealed the action taken on his initial request, he narrowed his

---

[1] For clarifications purposes only, it should be noted that in 2003, after a jury trial, the plaintiff was convicted of two counts of forcibly assaulting, resisting, opposing, impeding, intimidating or interfering with a federal officer engaged in performance of his official duties through the use of a deadly or dangerous weapon. (Criminal Action 02-111, Eastern District of Kentucky)

request seeking only bonds and on July 21, 2006, a new request file was opened for plaintiff.[2] On August 22, 2008, defendant sent plaintiff a letter stating that no responsive records had been found regarding the requested subject of bond information. Plaintiff filed an appeal on August 28, 2008. Defendant notified plaintiff on October, 20, 2008 that his file was being closed because of plaintiff bringing a civil action in the United States District Court for the Northern District of West Virginia.

## IV. Analysis

The issue in the case at hand is whether the search conducted for plaintiff's requested records was reasonable. There is no debate that plaintiff filed a FOIA request with the EOUSA and no records that were responsive the plaintiff's request for non-public criminal bonding information were found.

An agency is under a duty to conduct a reasonable search for responsive records when presented with a FOIA request. Oglesby v. Department of Army, 920 F.2d 57, 68 (D.C. Cir. 1990). However, an agency is not required to search every record system available, but only those that are likely to produce the requested documents. Id. "[R]easonableness is measured by the method of the search, not its results." McCoy v. U.S., 2006 WL 463106, *12 (N.D.W.Va. 2006) citing Cleary, Gottlieb, Steen, & Hamilton v. HHS, 844 F.Supp. 770, 777, n.4 (D.D.C. 1993).

"To establish that it has made a good faith effort to obtain the requested information, the agency must provide affidavits or declarations of the responsible agency officials." McCoy at 12. "Those affidavits must establish that the agency conducted its search using methods which can reasonably be expected to produce the information requested." Id. citing Oglesby at 68. "The

---

[2]Although the EOUSA is unable to locate the plaintiff's letter in which he narrowed the scope of his request, June 22, 2006, notations made in the request filed indicate that the plaintiff did narrow his request to seeking only bonds. Doc. 21-2, p. 3

4

search must have been made in good faith and the agency has the burden of demonstrating the adequacy of its search." Id.

The Defendant has provided affidavits from Pamela McCarty and Dione Jackson Stearns regarding the methods used in conducting the search for the plaintiff's requested records. Pamela McCarty is a legal assistant in the Civil Division of the United States Attorney's Office for the Eastern District of Kentucky and her duties include receiving and being assigned requests filed under the FOIA (Doc. 21-2 ¶ 1). Ms. McCarty indicates that she searched the Legal Information Network System ("LIONS") database in attempting to locate plaintiff's requested records (Doc. 21-2 ¶ 5). She also indicates that this database maintains up-to-date information on cases and matters opened by Assistant U.S. Attorneys and produces reports on those matters (Doc. 21-2 ¶ 5). Ms. McCarty claims that she found the criminal file regarding plaintiff's case but did not find any records responsive to plaintiff's request (Doc. 21-2 ¶ 5). She also sent out e-mails to every attorney, paralegal, legal assistant, and administrative personnel to determine if any files were opened under Gregory Davis, and the only file under the plaintiff's name was 5:02cr111. Two pleadings were found that referred to bonding and they were sent to the EOUSA for review. Both of those pleadings were public records (Doc. 21-2 ¶ 7). Dione Jackson also details the method of the search conducted in searching for plaintiff's requested documents, affirming the statements made by Ms. McCarty (Doc. 21-3 ¶ ¶ 18 - 22).

The declarations provided by defendant were made by responsible officials, the person who conducted the search and the person responsible for making final decisions. The affidavits also provided great detail into how the search was conducted and what methods were used. The LIONS database is the system typically used to locate these types of requested records. Not only was an

exhaustive search of this database performed, but also multiple e-mails were sent requesting any files or information on cases opened under plaintiff's name. Therefore, it is clear that defendant conducted a reasonable search with regard to plaintiff's requested records.

The undersigned notes that in the plaintiff's Motion for Summary Judgment, the plaintiff alleges that the search made in this matter was not reasonable. More specifically, the plaintiff alleges that "[p]ursuant to Public Law 98-269 it is the 'responsibility' of the agency who awarded the contract to furnish certified copies of Miller Act contract and payment bonds." (Doc. 24-3, p.3).

The plaintiff has pursued the issue of "Miller Bond Act" unsuccessfully in the Eastern District of Kentucky. (See 5:09-01-JBC). In that case, the plaintiff filed a Complaint under the Miller Act, 40 U.S.C. § 3131, *et seq*, alleging either that his person or his financial obligations under the Judgment and Commitment Order in his criminal case constituted an "account" under the Miller Act which was deposited in federal prison in 2006. Moreover, the plaintiff contended that his subsequent labor in prison satisfied all of his obligations under this "account" and that he was therefore entitled to several million dollars in compensation under a performance bond. In addition, the plaintiff alleged that the United States gave him a "payment bond" for his labor, but that even after he satisfied his obligations under the account, the United States failed to pay him. As relief, the plaintiff sought recovery of $2.5 million in damages.

In dismissing the plaintiff's Complaint under the Miller Act, the Eastern District of Kentucky noted that the Miller Act expressly permits a person who provided labor or materials to a project covered by a payment bond required by Section 3131 to sue for payment directly against the payment bond if he remains unpaid 90 days after the work is completed. 40 U.S.C. § 3133(b)(1). However, Section 3131 requires a payment bond only for projects exceeding $100,000 "for the

6

construction, alteration, or repair of any public building or public work of the Federal Government." 40 U.S.C. 3131(b). The Eastern District of Kentucky then found that the Judgment and Commitment Order which sent the plaintiff to prison was not a contract "for the construction, alteration, or repair of any public building or public work of the Federal Government." Rather, it is a document that memorializes the criminal sanction imposed upon him.

Accordingly, the plaintiff's allegation that the "United States search was not reasonable in this matter" is clearly without merit. Despite the plaintiff's continued assertions to the contrary, there can be no Miller Bonds payable to him.

## V. Recommendation

For the reasons stated above, the undersigned recommends that defendant's Motion for Summary Judgment (Doc. 20) be **GRANTED,** the plaintiff's Motion for Summary Judgment (Doc. 24) be **DENIED** and the Complaint (Doc. 1) be **DISMISSED WITH PREJUDICE**.

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as reflected on the

docket sheet. In addition, the clerk is directed to send a copy to counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATE: July 14, 2009

    /s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE